Mr. Allen, any time you're ready. Thank you. May it please the Court, Your Honor, we are here to report because the District Court granted a summary judgment on a design patent, a one-piece refrigerator hinge bracket, stating that it was functional and therefore not ornamental. We disagree with that finding and we believe that the case law supports our position. Well, it is functional, is it not? Well, Your Honor, it is functional to the extent that any patented item is functional. We couldn't get any kind of patent on it if it was not functional. But the point is, as the Court has stated, it is not solely, the design is not solely dictated by function. In other words, there are other designs that can accomplish the same function. And that is really the test because, again, any article of manufacture has some functional components to it and we admit that. We clearly admit that it is a lower cost product, that it accomplishes the function of the refrigerator hinge bracket just the same as any other design accomplishes the function of the refrigerator hinge bracket. And that function, as we've stated, is to hold up a refrigerator or freezer door, allow it to open and to close. Yeah, but there's another function here and that is the strength and cost function. And the record seems to pretty clearly indicate that the smooth and gradual transition has strength and cost advantages that alternatives don't have. So, if the smooth and gradual transition were the only point of novelty in this design patent, you'd lose, wouldn't you? Your Honor, what we believe is that when Mr. Rostovsky when asked specifically leading questions in his deposition is, does he believe this piece costs less than the other designs? He said yes. When he was asked… No, but respond directly to my question. If smooth and gradual transition were the only point of novelty in this hinge, the only one, you would lose, right? Because that smooth and gradual transition has a unique functional characteristic in terms of strength and cost. No, Your Honor, we do not agree with that. We believe that Mr. Rostovsky believes that it costs less. We believe that Mr. Rostovsky believes that it is a strong hinge. There is no evidence that it is in fact stronger than the two-piece hinge that Maytag had and that other ones had. It is basically counsel from Maytag asked Mr. Rostovsky what his belief is. His belief is that it did cost less. His belief is that it is stronger. His belief is that it is also a better part. And when asked what was meant by a better part, he said those things. But he also said it looks better. It is more attractive. Well, the fact that it's aesthetic also doesn't mean that you can get it if the form is dictated by the function. That is true. But the form is not dictated by the function because you can develop other designs, other forms that accomplish the same function. Well, that's when you define function in terms of helping to open and close the refrigerator. But there's no evidence that other forms would have the advantages of smooth and gradual transition in terms of cost saving and strength, right? There is no evidence other than Mr. Rostovsky's opinion that he believes this is a better part. Certain aspects of that part include that he believes it costs less to manufacture than other hinges. He believes that it is a stronger part. There is no evidence that it is a stronger part. The function of the refrigerator bracket, and I think this is where there is some difference, the use and purpose of the refrigerator bracket is to hold that door up, to allow that door to open, to allow that door to close. That's the function. And I think what has been argued is somewhat the process by which he came about that. And that is distinct, in our view, from what the function, what the use is, what the purpose is of that article. The purpose of that article is to hold the door, to allow it to open, to allow it to close. And if that particular design... I don't understand. Why can't there be other functions, like strength? Strength is function, right? That is true, but strength does not dictate that design. The strength, it can be stronger. We don't dispute that Mr. Ostofsky said that it's stronger. We don't dispute that Mr. Ostofsky said that it costs less. The point is, you do not go into that and then come up and say, this is the function. Is this the only way to achieve that function, by having this smooth design? It's not. There are many other ways. Well, you say that, but there's no evidence in the record that the strength and cost functions of the smooth and gradual transition can be achieved in another way, is there? I'm sorry, Your Honor? There's no evidence in the record that the strength and cost advantages of the smooth and gradual transition can be achieved in some other way, right? Well, the evidence is that there are a lot of other manufacturers that make it a different hinge bracket and have not adopted that. If there were, everyone would be using this design. And no one else is using this design, which indicates that there are other ways... So nobody testified that you can achieve the strength and cost advantages of the smooth and gradual transition with an alternative design? No one testified to that. That is true, Your Honor. But again, no one testified that strength dictated that it had to be made with that smooth transition. No one dictated that the cost dictated that it had to be come up with a smooth transition. The function did not dictate this design. Do you agree that based on the prosecution history of this design patent that the smooth and gradual transition was the only point of novelty? Yes, Your Honor. We do. Okay. Thank you. Your Honor, the points here raised by the other side have to do with what we believe are language in some of the cases that show an intent to warn them. And we believe that because it is summary judgment, there are two issues to that. First of all, there are points in the record where it is identified that Mr. Oskoski does identify in addition to cost, in addition to strength, that there are aesthetic considerations, that it makes a better looking part. There are four specific points in the joint appendix that address that. And so we believe that a reasonable jury could in fact find that this was a part that was not dictated by its functions. And therefore, we find that there is, for that reason, that there is a genuine issue of material fact to that part. Your Honor, we think this is a very, we do think this is a very direct case. When you look at the mirror-like case, when you look at the language used by the court, when you look at what an objective test of design patents would be, it has been laid out by this court. It is when the design is dictated by the function, solely by the function. And we believe that this design, because there are alternative designs both out there, there's evidence in the record of other designs, there's evidence of other designs used by Maytag, we believe that the function did not dictate this design. And therefore, we ask that you reverse the holding of the lower court. Thank you, Mr. Allen. We'll preserve your five-minute rebuttal. Mr. Weber? Thank you, good morning. Mr. Weber, have you shown that no other design could perform the function? Have we shown that?  We started off with a hinge that was a two-piece hinge. You had the exact same plate that is in the patented design. You had a hole through it, a pin down through it. The pin was welded to the plate. It caused problems. Well, first of all, it was more expensive because you had more operations, etc. You know, you had to do the drilling, you had to do the placing of the pin, you had to do the welding of the pin. Then when you do the plating, you have gaps and crevices, so you don't get uniform plating. And the bottom line is there was a meeting. The purpose of the meeting, the express purpose of the meeting, was to find the most economical design for a top hinge for a refrigerator. That's why Maytag and Mr. Rostovsky got together. Yeah, but that wouldn't have been the purpose. I think Judge Probst's question is a key question. You have evidence of the smooth and gradual transition, which is the entire focus of this. I agree that's the only point of novelty, that it had cost and strength advantages. But what seems to be missing is testimony that you could only achieve those cost and strength advantages by the smooth and gradual transition as opposed to some other approach. Well, that's because that's where we went. We went to that and said that is the best design. In fact, that was Mr. Rostovsky's testimony. It was the best design, the most durable, the longest lived, the most economical, the strongest, etc., etc. I mean, once you find what's really good, you generally don't go much further. You had a meeting. You had a purpose for the meeting. The purpose for the meeting was satisfied, and you went then with that hinge. I mean, there was no mention of ornamentation in that meeting. There was no purposeful ornamentation. I mean, this is a hinge for the top of a refrigerator. So it couldn't still have aesthetic attraction. Of course it could, Your Honor. Now, with respect to the first hinge that you replaced, was it the same layout except there was two pieces? Exactly the same layout. The only difference is the smooth, gradual transition. And why is it there? Well, Mr. Rostovsky testified why it's there. I questioned him. You're saying that a radius transition is stronger than a sharp transition. Is that what you're saying? Yes. And then also in doing the radius transition, you're better able to maintain the same thickness of the material through the transition? Yes. I mean, that radius transition is there, first of all, it's the inherent result of drawing metal, drawing a pen out of a flat piece of metal. You get the radius transition. You can do some control, and you do the control to make sure that it's a uniform thickness when you do the draw so that you don't have a weak point where you make the transition from horizontal to vertical. That's what made this stronger, better, plus. But how do we know? Where is it in the record that no other design could do the same? Because nobody knows of another design that can do it. So are you saying for summary judgment purposes, they have to prove that it's not your burden to prove it when it's their burden to prove that it's not? I think we did prove it through his testimony, that he acknowledged there was no better design. This was the strongest, best, da-da-da-da-da, went on and on down the line. And again, there was no purposeful ornamentation. Where does he say it's the best? He says better part. 129 is 30. Let's see. Let's see, 155, 156, 164, 165. It appears. 155 of the appendix? No, there's a different page number. Pardon? There's no 155 in there. Ah, those, okay. Those were pages that were, I had mentioned, this was Mr. Allen earlier, that he had left out of the appendix and I had written him when the appendix was filed and asked him to add them and unfortunately he did not. So we do have 164, did you say 164? Let's see, 164, 165. This is where he's talking with Mr. McClellan, who he went to see to confirm that it could be made, and on 64 and 65 he's saying that Mr. McClellan knew of no other way to make the hinge or to make the one-piece hinge. You mean in terms of lines 2 and 3, when it says how many ways can you think of making the one-piece hinge to look like Exhibit 2, just one? That's correct, Your Honor. If you look at what Mr. Rostovsky did, which was what the meeting was about, he eliminated a part, he eliminated a manufacturing step, he developed a pen that had better plating characteristics, a pen that he, now all these are his acknowledgments, a pen that had improved part life, or a hinge, a hinge that had better strength, and all of that was the result of the smooth, gradual transition. Well, it was also the same pen, so it was all one piece, wasn't it, instead of two pieces? Yes, that's why I said he eliminated a part. I mean, he pulls the pen from the plate. So now you've got a one-piece unit, and he makes a smooth, gradual transition so that you get the strength, so that you get the plating characteristics, so that you get all these things, and again, the purpose of the meeting was not ornamentation. The purpose of the meeting is how can we develop the most economical hinge pen, or refrigerator hinge plate. He looked at it, he testified it was the most economical, durable, functional hinge that he could imagine, that he considered, I think it's also noteworthy, he considered a utility patent. His testimony was he went to his patent attorney, and he only went to a design patent because of cost. But that really doesn't mean anything, does it? Well, I think... You can still get both. You can still get a utility patent and a design patent. Absolutely. I apologize, I don't mean to be talking over you, Your Honor. Absolutely, you can have a design patent and a utility patent, but here you've got... There's only one feature that's different from the prior art. I don't know that in that situation you can. Maybe you can. But I think in that situation where the only difference between the new device and the prior art device, there's a smooth, gradual transition that you can get both. In fact, I'm saying that you can't, not in this situation. If you looked at the Barry Sterling case and looked at all of those factors in there, while there hasn't been any advertising, clearly he didn't shrink from touting all the benefits of his hinge, again, having only one distinguishing feature over the prior art. And then when you consider the absence of non-functional features, the only difference, again, from the prior art was the, quote, smooth, gradual transition between the downwardly extending cylindrical portion and the surrounding flat portion. But that's what reduced the cost, extended the life, improved the plating, made it stronger, provided all the benefits that were the purpose of the meeting. Just so that I can understand exactly what the smooth and gradual transition is, could you look at these figures on the attachment to the blue brief and show me where the smooth and gradual transition is? Because the parties seem to agree on what it is, but I'm not reading the briefs all as clear. Is it like, for example, in Figure 4, there's the flat portion and then the pin is shown at the bottom. Is it the transition between the place where the pin is joined to the flat portion? That's true. When you're looking at the side, it's that little arced or curvate interconnection there. And then if you look in Figure 1, Your Honor, up at the top, you can see where it's cut by that shading. You can see how it's rolled or drawn down in there. And so it's pulled down. The metal is actually pulled in the forming process and it's pulled so that you get the nice uniform... It's just that little notch in the corner in Figure 4 where the smooth and gradual transition between the flat plate and the pin. That's the way it would look at the underside or from the side view. Then the top view can better be seen in Figure 1 and Figure 2. I don't understand how the top view helps you to see the smooth and gradual transition. Well, I believe as you look there in that hole, you can see the shading. The shade lines show that it's rolled rather than a sharp transition. You're talking about the pin itself. Yes, yes. All the rest of that is old. I mean, you know, refrigerator hinges for decades had looked like that. And I think Mr. Allen has acknowledged that. Yeah. Previously, you drilled a hole, put in a pin, tack-welded it, sent it through plating, did all those sorts of things. Now you just draw the pin out of the piece of metal. It's much, much simpler, and you do it so that it's smooth and gradual so that you maintain the thickness through the turn so that it maintains its strength. Because the argument is that the forming it out of a single piece of metal and drawing it down automatically results in a smooth and gradual transition. And if you're going to do it that way, you necessarily end up with a smooth and gradual transition. I believe that that's the case. I believe that that's the case. Now, there's probably some control that you impart to it. I'm not really sure. But the bottom line is, sure, as you draw, I think it's true about just about anything. As you start to draw, it rolls. The plane surface rolls into what you're drawing, and you get that curved structure. And that's what they ended up with. But we believe eliminating a part, eliminating an assembly step, getting better plating, stronger, improved life, all those things on this one little area that's the only difference between this product and the prior art, clearly demonstrates the functional nature. And that to the extent that it's attractive to look at, first of all, who cares? Second of all, there was no purposeful ornamentation. And thirdly, it's the inherent result or byproduct of good workmanlike manufacturing process. So we do not believe that, obviously, we do not believe that the patent should have been granted. And we don't believe that, had the Patent Office been told about that, that the patent examiner would have granted it. Thank you, Mr. Weber. Thank you. Mr. Allen, you have five more minutes. You don't have to take them all, but if you need them, you have five. Thank you, Your Honor. Mr. Weber's raised some questions that I think really do need to be addressed here. One is, the evidence, as Mr. Weber has presented, is really Mr. Ostofsky's pride in developing this part. I mean, he thinks it's the best design. He thinks it's the cheapest design. He also thinks it's an attractive design. That really doesn't provide anyone else notice as to whether this is a valid patent or not, and it's not really the test. But what he's saying is that if you're going to use this method of drawing the pin down out of the other part, and that drawing down has strengthened cost advantage, he's saying you automatically get the smooth and gradual transition. So what's the answer to that? Well, the answer to that is, if you come up with the design and come up with a process for making that design, and that particular process comes forward with a particular design, that's not really the test. Does that process necessarily come up with that design? The test is, again, does the function of that end-resulting article result in a... Is it dictated by the function of that article, not by the process that was developed or anything else? If you look at the end piece, not how you got there, not whether there was some meeting, was the meeting based upon cost or anything else? If you look at the end product, say that product, what is the function of that product? The function of that product, you go back to his opening and shutting the door, many other... He's saying that, but that's not the function we're talking about. The function we're talking about is the strength and cost associated with the smooth and gradual transition. And my response to that is, there is no objective evidence that this pen is stronger or cheaper than any other pen on the marketplace. What you have in the testimony is Mr. Ostofsky's deposition, when he was asked, does he think this is a better part? He said, yes, he thinks it's a better part. Why does he think it's a better part? He thinks it has better plating characteristics. He thinks it's lower cost. He also thinks it looks nicer. And when you look at the design, and really, it is the top and the bottom. It's everything at that end of the hinge. When you look at that design, and you look at the examples of the designs in terms of when you take a separate piece, you take a flat piece, and you take a separate piece, and you knock it through the bottom, you've got extra material on top, you've got welding, you've got material underneath. It is, I would contend, more attractive to have a single piece where it's drawn down under. That is ornamentation. And to the extent that it is a refrigerator hinge bracket, that's fine because that's what people see. It's right on the face, right in front of them. Again, it doesn't have to be aesthetic or... Well, people can see the smooth and gradual transition, right? Yes, they can, Your Honor. How? Some refrigerators have caps. Not all refrigerators have caps. It's not an issue in this motion, but there is evidence that basically low-end refrigerators do not have caps. That hinge is basically at the top of the refrigerator. But you're not answering my question. My question is, how can they see the smooth and gradual transition in the pin? Well, that goes to your question about you can see it from the top, and if you turn back to the figure you were looking at in the appellant's brief, the patent figure one, you see that top portion is what you look at if you're looking at the top of the refrigerator, that top portion right there. Now, if there's a cap, it covers it, but if it's not, it doesn't. It is a smooth transition, and that's in place of areas where you have taken a separate pin, gone on top, put the cap on, welded around it. It is aesthetically more pleasing to have a lower, less number of parts, less welding than the option. To the extent that we say, oh, it's the same part, he just did this. Number one, that's an obviousness issue, not a functionality issue. But number two, the response to that is Maytag's own engineer, when told that this is basically the process that Mr. Rostovsky suggested, the Maytag engineer said, oh, that's impossible. You can't do that. So, I don't want to get off track on obviousness versus functionality, but the issue here is, for this motion, is the functionality of the design. And we have shown other alternative designs, and to the extent that it is a refrigerator hinge bracket, I think it is entitled to the design just as anything else. Thank you, Mr. Owens. Case is submitted.